**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **BARBARA J. LEE,** ) | **CASE NO. 1:13CV1886** |
| ) | |
| Plaintiff, ) | **MAGISTRATE JUDGE** |
| ) | **GEORGE J. LIMBERT** |
| v. ) | |
| ) | |
| **CAROLYN W. COLVIN¹,** ) | **MEMORANDUM OPINION & ORDER** |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| Defendant. ) | |

Barbara J. Lee ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the ALJ's decision and REMANDS this case to the ALJ for proper evaluation and articulation of the treating physician rule as to Dr. Serhal's opinions and for proper evaluation and articulation of the ALJ's credibility determination.

**I.    PROCEDURAL AND FACTUAL HISTORY**

Plaintiff filed her applications for DIB and SSI on July 1, 2010 alleging disability beginning June 21, 2010 due to diabetes, epilepsy and depression. ECF Dkt. #11 ("Tr.") at 222-232, 296. The SSA denied Plaintiff's applications initially and on reconsideration. *Id*. at 83-142. Plaintiff requested an administrative hearing, and on November 17, 2011, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id*. at 58, 160. The ALJ held a supplemental hearing on January 30, 2012 at which Plaintiff, again represented by counsel, and a VE testified. *Id*. at 32. On March 12, 2012, the ALJ issued a decision denying benefits. *Id*. at 13-23. Plaintiff appealed the decision, and on July 8, 2013, the Appeals Council denied review. *Id.* at 1-7.

---

¹On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, replacing Michael J. Astrue.

On August 27, 2013, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On November 22, 2013, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #s 12, 13.  On January 6, 2014, Plaintiff, through counsel, filed a brief on the merits.  ECF Dkt. #15.  On February 5, 2014, Defendant filed a brief on the merits.  ECF Dkt. #17.  On February 18, 2014, Plaintiff, through counsel, filed a reply brief.  ECF Dkt. #18.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On March 12, 2012, the ALJ determined that Plaintiff suffered from seizure disorder, affective disorder and diabetes mellitus, which qualified as severe impairments under 20 C.F.R. §§404.1520(c) and 416.920(c).  Tr. at 15. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.9256 and 416.926 ("Listings").  *Id*. at 16.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: never using ladders, ropes or scaffolds, but frequently using ramps or stairs; frequently balancing, stooping and crouching, but never kneeling or crawling; avoidance of any unprotected heights and dangerous machinery; work limited to three to four step tasks that are simple, routine, and low stress, with no high production quotas or piece rate work; no work involving arbitration, negotiation or confrontation; no driving; and work that allows her to take three extra breaks per day lasting five minutes each.  Tr. at 18.  Based upon this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work as a server, nursery school attendant or cashier, but she could perform a number representative occupations existing in significant numbers in the national economy, including the occupations of assembler of small products, assembler of electrical accessories, and electronics worker.  *Id*. at 23.  As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and she was not entitled to DIB or SSI.  *Id.*

**III.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,*

486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V. LAW AND ANALYSIS

### A. TREATING ENDOCRINOLOGIST

Plaintiff first alleges that the ALJ provided inadequate reasons for attributing less than controlling weight to the opinion of her treating endocrinologist, Dr. Serhal, who opined that, inter alia, Plaintiff would miss about four days of work per month due to her diabetes. ECF Dkt. #15 at 5-10. The Court agrees.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Commissioner of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). For example, where an ALJ failed to describe "the objective findings that were at issue or their inconsistency with the treating physician opinions," remand has been ordered. *Barrett v. Astrue*, 2011 WL 6009645, at *6 (E.D.Ky. Dec.1, 2011). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ).

In this case, Dr. Serhal completed a RFC assessment for Plaintiff on November 14, 2011 concerning her diabetes. Tr. at 617-618. Dr. Serhal identified Plaintiff's diagnosis as "type I Diabetes Mellitus-Uncontrolled." *Id.* at 617. She identified Plaintiff's symptoms as

-5-

hyper/hypoglycemic attacks and seizures. *Id.* In the "Comments" section of the form, Dr. Serhal wrote that Plaintiff has diabetes that is very hard to control, she has complications from both high and low blood sugar, and she has a history of seizure disorders which can be affected by sugar control. *Id.*

Dr. Serhal opined that Plaintiff had a poor degree of control over her blood sugar on average and she needed to check her sugar 4-6 times per day and administer insulin four times per day. Tr. at 617. She explained Plaintiff's insulin regimen and indicated that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations. *Id.* She also noted that Plaintiff needed reminders from her family as to when to take her insulin each day. *Id.* She concluded that Plaintiff's symptoms would be severe enough to frequently interfere with her concentration and attention to perform even simple work tasks and she would experience both good and bad days. *Id.* at 617-618. Dr. Serhal estimated that Plaintiff's impairment or treatment would on average cause Plaintiff to be absent from work about four days per month. *Id.* at 618.

The ALJ addressed Dr. Serhal's assessment in his decision. Tr. at 20. He explained that he afforded the assessment "less weight" because although Dr. Serhal "has a longitudinal history of treating Ms. Lee, her opinion that Plaintiff would miss approximately four days of work per month is not supported by the medical evidence of record. This contention is further inconsistent with Ms. Lee's reported functional abilities that include attending to her own personal hygiene, cooking for herself, shopping for herself, and managing her finances." *Id.*

The Court finds that this analysis does not meet the requirements of the treating physician rule. In *Gayheart v. Commissioner of Social Security*, 710 F.3d. 365, 376 (2013), the Sixth Circuit found that substantial evidence did not support the ALJ's decision to give "little weight" to the opinions of a treating physician where the ALJ indicated that the treating physician's opinion failed both prongs of the controlling weight test and merely concluded that the treating physician's opinions were "not well-supported by the objective findings." *Id.* at 377. The Court held that while the ALJ had discussed the nature of the treating physician's relationship with the claimant and the internal inconsistencies of the physician's opinions with portions of her reports, these were factors that were to be applied only after the ALJ determined that a treating physician's opinion was not

-6-

entitled to controlling weight. *Id*. at 376. The Sixth Circuit found that the ALJ's failure to provide good reasons for attributing less than controlling weight to the treating physician's opinions hindered a meaningful review of whether the ALJ properly applied the treating physician rule. *Id*. at 377. The Court also held that the ALJ's failure to identify the substantial evidence that was inconsistent with the treating physician's opinions also hindered the review. *Id*.

Similarly in the instant case, the ALJ relied upon a generic reference to the "the medical evidence of record" as support for affording less weight to Dr. Serhal's assessment without identifying such evidence or providing citations to such evidence. Tr. at 20. The ALJ did cite to Plaintiff's report of her daily activities and concluded that these activities were inconsistent with Dr. Serhal's restrictions. *Id*. He cited to Plaintiff's abilities to attend to her own personal hygiene, cook, shop and manage her finances as evidence that Plaintiff would not miss four days of work per month. *Id*. However, the Court is uncertain how the abilities to clean oneself, cook, shop and manage money negate a finding by a treating endocrinologist that Plaintiff would miss four days of work per month due to her impairment or treatment for her impairment. The ALJ did not address any of Dr. Serhal's treatment notes or cite to any other medical evidence in attributing "less weight" to Dr. Serhal's assessment. Consequently, this Court is unable to conduct a meaningful review of whether the ALJ properly applied the treating physician rule.

The Court notes that the ALJ did discuss Plaintiff's diabetes impairment in a portion of his decision separate from his discussion of Dr. Serhal's assessment. In a section generally discussing Plaintiff's diabetes, the ALJ indicated that physician treatment notes showed that Plaintiff was noncompliant with her diabetes medications due to financial difficulties on multiple occasions. Tr. at 19. The ALJ also cited to physician notes indicating that doctors counseled Plaintiff that her uncontrolled blood sugar could impact her seizure disorder and that subsequent reports by Plaintiff to her doctors that her blood sugar readings were not rising to more than 500 as they had in the past. *Id*. The ALJ further noted that Plaintiff was hospitalized in January of 2011 and progress notes indicated that doctors obtained Plaintiff's best hemoglobin A1c reading in years while she was in the hospital. *Id.* The ALJ also cited to Dr. Serhal's November 2011 assessment in which she noted that Plaintiff's family needed to remind Plaintiff as to when to take her insulin. *Id.* Finally, the ALJ

-7-

cited to Plaintiff's report that she improperly took her insulin at times in an effort to overdose. *Id.* Reviewing all of these facts, the ALJ concluded that "[i]n short, Ms. Lee's medical records demonstrate that she had experienced some improvement in terms of controlling her diabetes even though she has not fully been compliant with treatment." *Id.*

The Court finds that this section, even combined with the section in which the ALJ discussed Dr. Serhal's assessment, still fails to meet the requirements of the treating physician rule. First, the Court is uncertain whether the facts cited to by the ALJ actually constitute "some improvement" in Plaintiff's impairment, especially when Dr. Serhal, the treating endocrinologist, opined that on average, Plaintiff's blood sugar was poorly controlled. Tr. at 617. Second, and more importantly, Dr. Serhal's assessment addressed the facts that the ALJ relied upon, including the necessity of family reminders, blood sugar control affecting seizure disorder, and emotional factors that could affect Plaintiff's symptoms. Tr. at 622-623. Yet Dr. Serhal still indicated that Plaintiff "has had diabetes that is very hard to control" and has complications from low and high blood sugars. *Id.* at 623. And Dr. Serhal still opined that Plaintiff's symptoms would frequently interfere with attention and concentration to perform even simple work tasks and she would miss four days per month due to her diabetes or treatment for her diabetes. *Id.* at 622-623. The ALJ did not address Dr. Serhal's treatment notes or explain how or why Dr. Serhal's assessment is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or how it is inconsistent with other substantial evidence in the case record.

Of course, the Court recognizes that there are instances where an ALJ's failure to comport with the treating source doctrine may be deemed harmless. A violation of the rule might constitute "harmless error" where (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of §1527(d)(2) – the provision of the procedural safeguard of reasons – even though [ ]he has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547. None of these exceptions apply here. Defendant does not assert that Dr. Serhal's opinion is patently deficient, it is clear that the ALJ did not adopt Dr. Serhal's opinion, and the ALJ's findings were not consistent with that opinion.

-8-

In addition, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where [the court] cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir.2009) (quoting *Wilson*, 378 F.3d at 544).  That is the case here.

Accordingly, the Court remands the instant case for proper application, evaluation and articulation of the treating physician rule to Dr. Serhal's assessment as to the nature and severity of Plaintiff's diabetes impairment.

### B. CREDIBILITY

Plaintiff asserts that the ALJ erred when he discounted her credibility based upon a conclusion that she had experienced improvement in her mental health conditions.  ECF Dkt. #15 at 12-13.  Plaintiff contends that an "improvement" in symptoms is not a reliable reason for discounting credibility and the ALJ's reliance upon a single notation from a non-acceptable medical source therapist on one date where she had a decrease in symptoms is not evidence of lasting improvement.  *Id.*

The social security regulations establish a two-step process for evaluating pain and other symptoms.  *See* 20 C.F.R. §§ 404.1529 , 416.929, SSR 96-7p.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.  *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's

-9-

symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the first prong is satisfied because the ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." Tr. at 18. Therefore, the remaining question concerns the ALJ's credibility determination related to Plaintiff's complaints of symptoms regarding her mental health impairments:

> With regard to Ms. Lee's affective disorder, the record demonstrates that she had made numerous suicide attempts over the years, and she testified that she continues to struggle with suicidal ideation. However, Ms. Lee's mental health treatment record indicates that she has shown marked improvement in terms of her ability to cope with adversity as well as an improved mood through the use of medication such as Prozac and counseling. [Exhibit 15F:2] Moreover, Ms. Lee has been consistently described as alert and oriented throughout both her medical and mental health treatment records. [Exhibits 2F, 5F, 7F, 9F, 11F, 12F, 15F, 17F, 19F and 24F] In short, Ms. Lee's mental health treatment records demonstrate that she has experienced a positive response to relatively conservative treatment. Additionally, Ms. Lee has consistently reported a relatively high level of independent functioning, which includes attending to her own personal care matters, cooking, cleaning, shopping, and managing finances. [Exhibit 6E] The foregoing factors function in concert to discredit the extent of symptoms and limitations that Ms. Lee has alleged.

-10-

*Id.* at 19.

As medical support for his credibility determination, the ALJ cited to a single notation by Plaintiff's therapist dated July 20, 2011 which indicated that Plaintiff responded well to a new medication added to her medication regimen. Tr. at 29, citing Tr. at 516. Ms. Harrison, Plaintiff's treating counselor, noted on July 20, 2011 that Plaintiff presented without the depressive symptoms that she had at her last appointment and she appeared to have a much improved ability to cope. *Id.*

However, as Plaintiff points out, on August 6, 2011, less than one month after the note cited by the ALJ, she was taken to the emergency room after cutting her left wrist in a suicide attempt and stating that she was having suicidal ideations. Tr. at 586. It was noted that she reported attempting suicide five prior times using self-mutilation, cutting her wrists, attempting to drown herself, jumping in front of a car and hitting her head on the floor. *Id*. at 587.

In addition, the ALJ fails to explain how his citation to ten other medical notes describing Plaintiff as alert and oriented during physical and mental examinations proves useful in discounting Plaintiff's credibility concerning her symptoms and limitations relating to her affective disorders. Tr. at 19. In fact, one of the records included in the ALJ's citations is to Plaintiff's April 18, 2011 through April 22, 2011 hospital stay for increasing depression and suicide attempts by stabbing and cutting herself, running into traffic and attempting to drown herself in the bathtub. *Id.* at 19, citing Tr. at 493. Another of the records cited to by the ALJ is Plaintiff's August 6, 2011 emergency room trip for another suicide attempt by cutting her wrist. Tr. at 19, citing Tr. at 586.

Further, the Court fails to see any inconsistency between Plaintiff's activities of daily living and her allegations of symptoms and limitations relating to her mental health impairments. The ALJ has offered no explanation for his conclusion that the abilities to care for one's personal hygiene, cook, shop and manage finances is indicative of a mental ability to work full-time.

Consequently, the Court finds that the ALJ has failed to adequately explain his reasons for discounting Plaintiff's credibility as to the symptoms and limitations that she experiences relating to her mental health impairments. The Court therefore REMANDS the instant case to the ALJ for reevaluation and articulation concerning Plaintiff's credibility relating to her mental health impairments.

-11-

### C. RFC

#### 1. FAILURE TO INCORPORATE ALL LIMITATIONS

Plaintiff also asserts that the ALJ erred when he gave great weight to the opinions of state-agency reviewing psychologists and an opinion from a treating psychotherapist but then failed to provide for those opinions in his RFC for Plaintiff and therefore did not include the limitations from those sources in his hypothetical individual to the VE. ECF Dkt. #15 at 10.

State agency medical and psychological consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527. However, an "ALJ is not bound by any findings made by State agency or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i); *see also Smith v. Colvin*, No. 3:13-CV-776, 2013 WL 6504681, at *11 (N.D. Ohio, Dec. 11, 2013) (ALJ who attributes "great weight" to state-reviewing psychologist opinions not required to include in claimant's RFC all limitations assessed by them); *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133 (N.D.Ohio, Mar.19, 2013)(there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight). Accordingly, the Court finds that the ALJ was not required to incorporate all of the limitations found by the state agency reviewing psychologists. Thus, the ALJ was not required to incorporate all of the state agency limitations, including those of Dr. Semmelman, who opined, inter alia, that Plaintiff could interact only occasionally and superficially, receive instructions, and ask questions appropriately in a smaller or more solitary and less public to nonpublic work setting. Tr. at 20, citing Tr. at 97.

As to Ms. Harrison, Plaintiff's treating counselor, the ALJ gave great weight to her assessment despite acknowledging that she was an unacceptable medical source. Tr. at 20-21. Nevertheless, the ALJ failed to adopt all of Ms. Harrison's limitations as he did not incorporate her opinions that Plaintiff could tolerate only superficial interactions with others and she would be unsuccessful in working with the public because she was unable to maintain a consistently pleasant demeanor and interact in a manner appropriate to customer expectations. *Id*. at 20-21, 648. The

-12-

Court finds that the ALJ was not required to incorporate all of Ms. Harrison's limitations because a claimant's RFC is not a medical opinion but it is an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 404.1545(e); 416.945(e).

### 2. REFRIGERATED INSULIN AND PRIVATE AREA IN WHICH TO TEST BLOOD SUGAR AND ADMINISTER INSULIN

Plaintiff further asserts that the ALJ erred by not addressing whether the jobs that the VE identified had a refrigerator on site where Plaintiff could refrigerate her insulin since Plaintiff testified and the ALJ did not dispute that her insulin needed to be refrigerated. ECF Dkt. #15 at 13-14. Plaintiff asserts that her counsel asked the VE about jobs having refrigerators for employee medications and the VE testified that there was no way to tell how many job sites had refrigerators. *Id*. at 14.

Plaintiff is correct that the subject of taking her insulin on a daily basis was discussed at the hearing. Tr. at 37. She testified that she checks her blood sugar five to six times or more per day and she injects insulin four to six times per day. *Id.* at 37-38. She also explained that she has to take her insulin and meter with her and that the insulin should be refrigerated because if it is not, it can only be out for 15 to 30 minutes or it will go bad. *Id*. at 38. The ALJ asked whether Plaintiff needed refrigeration when she was away from home and Plaintiff responded, "Yes. Usually like a cooler. I have like this cooler that I put it in." *Id*. at 38.

Plaintiff's counsel thereafter questioned the VE about the jobs that he had told the ALJ would be available to the hypothetical individuals that the ALJ presented to him. Tr. at 47-48. Counsel asked if it was possible to know if the employers of the jobs that the VE gave the ALJ had refrigerators that the employees could use to store their medications. *Id*. at 48. The VE responded that there was no way of determining this. *Id*.

Plaintiff testified at the hearing that she stores her insulin in a cooler that she takes with her when she is away from home. Tr. at 38. The VE also testified that it is not uncommon for employers to have a refrigerator on the job site. *Id*. at 48. The cited testimony of both Plaintiff and the VE leads the Court to conclude that the ALJ's failure to address this issue in his decision and

-13-

the VE's lack of knowledge about whether a refrigerator is present on specific job sites was not prejudicial error.

Plaintiff also asserts that the ALJ erred by not addressing whether the employers of the jobs about which the VE testified would provide a private area for her to test her blood sugar and inject insulin.  The Court finds that this assertion is also without merit.  The VE testified that the jobs that he identified would allow one standard break in the morning, one for lunch, and one in the afternoon, as well as three additional five-minute breaks during the day so that Plaintiff could test her blood sugar levels and administer insulin.  Tr. at 47.  He explained that the jobs he identified allowed four to five minutes at each breaktime to use the restroom without causing any problems with production.  *Id*. at 47-48.  Plaintiff's counsel did not question the VE about the availability of other private areas besides restrooms at the job sites in which to test blood sugar and administer insulin.  Without further questioning by counsel or indication as to why a private area other than a restroom was

required, the Court finds that the ALJ did not err by not addressing this issue in his decision.

## VI.     CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the ALJ to properly apply and articulate the treating physician rule with regard to the opinions of Dr. Serhal and to reassess Plaintiff's credibility.

DATE: October 7, 2014

                                       */s/George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE